1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Kristie Sheets et al.,                          No.  2:20-cv-01683-KJM-JDP

12                     Plaintiffs,                    ORDER

13            v.

14   Lippert Components, Inc., et al.,

15                     Defendants.

16

17

18

19

20          Defendants Lippert Components, Inc. ("LCI") and Forest River, Inc. ("Forest River")

21   move to compel arbitration or, in the alternative, to dismiss the complaint and to strike nationwide

22   class allegations.  For the following reasons, the court **denies** the motion to compel arbitration

23   and **grants** the motion to dismiss with leave to amend.  The court need not reach defendants'

24   motion to strike class allegations.

25   **I.      BACKGROUND**

26          On June 29, 2017, plaintiff Kristie Sheets purchased a new 2018 Forest River Surveyor

27   towable recreational vehicle ("the TRV" or "the vehicle") from DeMartini RV Sales in Grass

28   Valley, California.  First Am. Compl. ("FAC") ¶ 13, ECF No. 8.  At the time of purchase, Sheets

and DeMartini RV Sales signed the Retail Sales Installment Contract containing an arbitration clause.  Retail Installment Sales Contract at 7, Cheryl Heward Decl. Ex. 1 ("Purchase Agreement"), ECF No. 13-1.  The arbitration provision states in part, in a paragraph titled "Please review – Important – Affects your Legal Rights":

> 1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
>
> 2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS [. . .]**
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by court action . . .

*Id.*; Cheryl Heward Decl. ¶ 4, ECF No. 13.   Approximately two years after purchasing the vehicle, plaintiff was driving when an odd smell began to emanate from her car.  FAC ¶ 15.  By the time she arrived at her destination, she discovered the "shackle[1] had broken off the frame." *Id.*  Sheets called an emergency welder who informed her the car's "frame" was "irreparably damaged" and he could not recommend a permanent repair.  *Id.* ¶ 17.  Sheets made subsequent calls to additional repair shops through which she learned the same information.  *Id.* ¶ 18.  She contacted both defendants "on three to four occasions to complain" of the defect and request compensation for her car's lost value.  *Id.* ¶ 19.  Defendants repeatedly denied the existence of the defect and informed her there was no warranty for her damages.  *Id.*  Sheets alleges the axle failure is the result of a product defect in the design and manufacture of LCI axles ("axle defect")

---

[1] The shackle is a component of the axle.  Compl. ¶ 42 ("the Axle's shackle broke off the frame, causing the frame to ride on top of the tire and damage the TRV.").

2

1   installed in recreational vehicles nationwide, including the 2018 Forest River Surveyor TRV.

2   *Id.* ¶ 2.  Sheets alleges LCI and Forest River engaged in material misrepresentations regarding the

3   quality, functionality, and advertising of axle components.  *Id.* ¶¶ 66–70.  In addition, Sheets

4   alleges LCI and Forest River failed to disclose and intentionally concealed the axle defect from

5   consumers.  *Id.* ¶ 79.

6          On July 10, 2020, Sheets filed a putative class action in Nevada County Superior Court

7   against DeMartini RV Sales, LCI and Forest River alleging violations of California's Consumer

8   Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL").  Not.

9   Removal ¶¶ 1–2, ECF No. 1.  In addition, Sheets alleged a breach of implied warranty of

10  merchantability against DeMartini RV Sales only.  *See id.* ¶ 2.  On August 21, 2020, LCI

11  removed the action to this court.  *Id.* at 1.  Forest River and DeMartini RV Sales joined the

12  removal on September 1, 2020.  Joinder, ECF No. 4.

13         On September 25, 2020, Sheets filed the operative complaint and voluntarily dismissed all

14  claims and causes of action against DeMartini RV Sales without prejudice.  Not. Vol. Dismissal

15  at 1–2, ECF No. 9.[2]  In the operative complaint, Sheets brings two class claims against defendants

16  for violating the CLRA and UCL.  *See* FAC ¶¶ 60–90.  She seeks to represent a nationwide class

17  of "[a]ll persons in the United States who purchased a Forest River TRV equipped with an LCI

18  Axle" or alternatively a California class comprised of the same individuals who live in California.

19  *Id.* ¶¶ 51–52.

20         In response, LCI and Forest River each filed motions to compel arbitration or, in the

21  alternative, to dismiss the complaint and strike nationwide class allegations.  Mem. Supp. Mot. to

22  Dismiss (LCI Mem.), ECF No. 16; Amended Mot. Compel (Forest River Mot.), ECF No. 15.[3]

23  /////

[2] Plaintiffs moved to dismiss DeMartini under Federal Rule of Civil Procedure 41(a)(1)(A)(i) as no defendant had yet to appear.

[3] On November 30, 2020, Forest River filed a Notice of Recent Disposition informing the court that the California Supreme Court denied a petition for review and request for depublication of *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020).  Not. Recent Disposition at 1–2, ECF No. 27.  Forest River acknowledges the issues presented by *Felisilda* have been thoroughly briefed in connection with the pending motions.  Forest River Mot. at 2.

1    After the matter was fully briefed, the court submitted the matter without oral argument.  *See*

2    Min. Order (Dec. 18, 2020), ECF No. 28.

3    **II.    LEGAL STANDARD**

4         **A.    Motion to Compel Arbitration**

5         Congress passed the Federal Arbitration Act (FAA) "in response to widespread judicial

6    hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339

7    (2011).  Section 2 of the FAA, its "primary substantive provision," *id.* (citation omitted), provides

8    that "[a] written provision in . . .  a contract evidencing a transaction involving commerce to settle

9    by arbitration a controversy thereafter arising out of such contract or transaction . . .  shall be

10   valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

11   revocation of any contract."  9 U.S.C. § 2.

12        The Arbitration Act also allows district courts to hear motions to compel arbitration.

13   9 U.S.C. § 4.  A court must normally answer two questions in response to a motion to compel

14   arbitration: (1) whether the parties agreed to arbitrate; and (2) whether their agreement covers the

15   dispute the plaintiff brought before the court.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th

16   Cir. 2015).  The party moving to compel arbitration bears the burden to prove these elements by a

17   preponderance of evidence.  *Ashbey v. Archstone Prop. Mgmt., Inc*., 785 F.3d 1320, 1323 (9th

18   Cir. 2015).

19        "When considering a motion to compel arbitration, a court applies a standard similar to

20   the summary judgment standard" of Federal Rule of Civil Procedure 56.  *Concat LP v. Unilever,*

21   *PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citation omitted); *see also Cox v. Ocean View*

22   *Hotel Corp*., 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has

23   the same effect as a grant of partial summary judgment denying arbitration . . . ."); *Greystone*

24   *Nevada, LLC v. Anthem Highlands Cmty. Ass'n*, 549 F. App'x 621, 623 (9th Cir. 2013) (reversing

25   an order compelling arbitration where opposing party had been afforded no opportunity to present

26   evidence and argument).  The party opposing arbitration receives the benefit of any reasonable

27   doubts and the court draws reasonable inferences in that party's favor, and only when no genuine

28   disputes of material fact surround the arbitration agreement's existence and applicability may the

4

1    court compel arbitration. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co*., 925 F.2d

2    1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51,

3    54 (3d Cir. 1980)); *Concat*, 350 F. Supp. 2d at 804. Nevertheless, the decision to compel

4    arbitration is mandatory, not discretionary, if the requirements are met. *See Dean Witter*

5    *Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

6          **B.**     **Motion to Dismiss**

7         A party may move to dismiss for "failure to state a claim upon which relief can be

8    granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a

9    "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

10   *Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1122 (9th Cir. 2013). The court

11   assumes all factual allegations are true and construes "them in the light most favorable to the

12   nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir.

13   2019). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the

14   motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

15        A complaint need contain only a "short and plain statement of the claim showing that the

16   pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl.*

17   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned

18   accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at

19   678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.*

20   (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task

21   drawing on "judicial experience and common sense." *Id.* at 679.

22        When alleging fraud, this standard is heightened. Fed. R. Civ. P. 9(b) ("[i]n alleging fraud

23   or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

24   The allegations must be sufficiently specific "to give defendants notice of the particular

25   misconduct which is alleged to constitute the fraud . . . so that they can defend against the charge

26   and not just deny that they have done anything wrong." *Alton v. Medtronic, Inc.*, 970 F.Supp. 2d

27   1069, 1105 (D. Or. 2013) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). Rule

28   9(b) generally requires the plaintiff identify "the who, what, when, where, and how" of the

1   misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  In

2   addition, a plaintiff "must set forth what is false or misleading about a statement, and why it is

3   false."  *Id.*

4   **III.   DISCUSSION**

5       **A.      Motions to Compel Arbitration**

6           Whether non-signatories can invoke an arbitration agreement under the FAA is governed

7   by state contract law.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).  Here, the

8   parties agree that California contract law applies.

9           The parties agree Sheets and DeMartini RV Sales entered into a purchase agreement by

10  signing a contract that contained a valid arbitration clause subject to the FAA.  The parties dispute

11  whether LCI and Forest River as non-signatory defendants may invoke the clause and compel

12  arbitration.  Defendants note this court's decision in *Cianchetta v. BMW of N. Am., LLC*,

13  No. 20-00241, 2020 WL 8620145 (E.D. Cal. Sept. 17, 2020), which rejected both of defendants'

14  arguments involving a nearly identical arbitration provision.  Defendants nevertheless argue the

15  court should compel arbitration in light of a California appellate decision, *Felisilda v. FCA US*

16  *LLC*, 53 Cal. App. 5th 486 (2020), which was issued on the same day this court heard oral

17  argument in *Cianchetta*.  Numerous district courts in this Circuit have addressed similar

18  arguments based on the *Felisilda* decision.  *See, e.g., Messih v. Mercedes-Benz USA, LLC*, No.

19  21-03032, 2021 WL 2588977, at *8 (N.D. Cal. June 24, 2021) (collecting cases where

20  manufacturer and signatory had standing to enforce the arbitration provision); *Ruderman v. Rolls*

21  *Royce Motor Cars, LLC*, No. 20-04529, 2021 WL 141179 (C.D. Cal. Jan. 7, 2021) (*Felisilda* not

22  applicable because in *Felisilda* plaintiff sued both manufacturer and dealer); *Safley v. BMW of N.*

23  *Am., LLC*, No. 20-00366, 2021 WL 409722, at *8 (S.D. Cal. Feb. 5, 2021) (holding same).  As

24  explained below, this court joins the majority of district courts that have denied motions to

25  compel after *Felisilda*, based on arbitration provisions similar to those in this case.

26              **1.      Equitable Estoppel**

27          Equitable estoppel prevents a party from claiming the benefits of a contract while

28  avoiding the burdens the contract imposes.  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.

2006).  A non-signatory may compel a signatory to arbitrate a dispute under this theory.  *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045–46 (9th Cir. 2009).

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (internal citations, alterations, and quotation marks omitted).

In *Cianchetta,* this court found a non-signatory defendant could not enforce an arbitration agreement under an equitable estoppel theory when the plaintiff was raising similar claims and the arbitration agreement was identical to the one at issue here.  *Cianchetta*, 2020 WL 8620145, at *3–5.  Having considered *Felisilda,* the court finds no reason to revisit its prior conclusion.

In *Felisilda*, the California appellate court ordered the non-signatory manufacturer to arbitration under an equitable estoppel theory.  *Felisilda,* 53 Cal. App. 5th at 497, 499.  However, *Felisilda* is distinguishable from the case at hand.  First, in *Felisilda*, the plaintiffs claimed a breach of express warranty under the Song-Beverly Consumer Warranty Act.  *Id.* at 491.  Here, Sheets does not allege a breach of warranty claim against LCI or Forest River.  FAC ¶¶ 60–88.  Instead, Sheets alleges LCI and Forest River engaged in misrepresentations and deceptive business practices under the CLRA and UCL.  *Id.*  Unlike *Felisilda*, where the purchase agreement "was the source of the warranties at the heart" of the case, the alleged violations of the CLRA and UCL here do not relate to the terms of the purchase agreement. *Felisilda,* 53 Cal. App. 5th at 496.  In fact, the operative complaint does not mention the purchase agreement at all.

Second, in *Felisilda* plaintiffs sued the manufacturer and the dealer.  *Id.* at 489.  The dealer moved to compel arbitration and the manufacturer filed a notice of non-opposition.  *Id.* at 491.  The trial court therefore "had the prerogative to compel arbitration of the claim against [the

1  non-signatory manufacturer].” *Id.* at 499.  Here, early on in the case, Sheets voluntarily

2  dismissed all claims against the dealer, DeMartini RV Sales, before proceeding with the CLRA

3  and UCL claims against LCI and Forest River only.  Not. Vol. Dismissal.  Defendants argue that

4  Sheets strategically dismissed the dealer to avoid an obligation to arbitrate with LCI and Forest

5  River.  Forest River Mot. at 3; LCI Mem. at 6–7 (“any argument that [LCI]’s ability to compel

6  arbitration is somehow diminished by [Sheets’s] recent strategic dismissal of [DeMartini RV

7  Sales] should be denied out of hand”).  This may be so, but voluntary dismissal under Federal

8  Rule of Civil Procedure 41(a)(1) results in “leav[ing] the parties as though no action had been

9  brought.”  *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999)

10  (quoting *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997)).  DeMartini RV Sales, the

11  signatory, is no longer a party to this action, another factor distinguishing this case from *Felisilda*.

12  **2.     Third-Party Beneficiary**

13  On a separate theory, LCI and Forest River argue their status as third-party beneficiaries

14  gives them the right to invoke the arbitration clause.  LCI Reply at 2–3; Forest River Reply at 5,

15  ECF No. 25.  Under California law, a non-signatory may invoke arbitration if the party can show

16  the “contract reflects the express or implied intention of the parties to contract with the third

17  party.”  *Comer v. Micor, Inc.,* 436 F.3d 1098, 1102 (9th Cir. 2006) (quoting *Klamath Water Users

18  Protective Ass’n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000)).  “Whether a party is an

19  intended beneficiary or merely an incidental beneficiary involves construction of the intention of

20  the parties, gathered from reading the contract as a whole in light of the circumstances under

21  which it was entered.”  *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 636 (1997).

22  In *Cianchetta,* this court found that non-signatory defendants could not rely on language

23  in an arbitration clause identical to the one at issue here, given “it is clear as to the non-signatories

24  who may invoke the clause: employees, agents, successors or assigns.  It does not list other third

25  parties from whom claims might arise.”  *Cianchetta*, 2020 WL 8620145 at *3.  Here, neither LCI

26  nor Forest River claim they are one of the enumerated parties; they may not compel arbitration as

27  “third-party” beneficiaries.

**B.      Motions to Dismiss**

Given that the court denies the defendants' motion to compel arbitration, it turns next to evaluate defendants' motions to dismiss.

**1.      CLRA Claim**

Sheets brings a claim against both defendants for violating the CLRA.  Sheets alleges that defendants violated California Civil Code sections 1770(a)(5), (7), (9), by:  (1) "representing that the TRVs and Axles have characteristics, uses, benefits, and qualities which they do not;" (2) "representing that the TRVs and Axles are of a particular standard quality or grade, when they are of another" because they are defective; and (3) "representing that the TRVs and Axles are safe, usable, and defect-free with the intent to sell Axles that contain the Axle Defect[.]" FAC ¶¶ 67–69.

**a.  Pleading of Fraud**

Both defendants argue Sheets does not sufficiently plead the CLRA claim with particularity.  Forest River Mot. at 4; LCI Mem. at 12.  As noted above, the Ninth Circuit has held that Rule 9(b)'s heightened pleading standard applies to claims alleging fraud under the CLRA. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Generally, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations." *Swartz v. KPMG LLP*, 476 F.3d 757, 764 (9th Cir. 2007) (internal quotation marks, citation omitted).  However, "alleging fraudulent omission or concealment," as plaintiff does here, "is somewhat different from pleading an affirmative misrepresentation in that a plaintiff cannot generally plead either the specific time of an omission or the place it occurred." *Obertman v. Electrolux Home Care Prod., Inc.*, 482 F. Supp. 3d 1017, 1024 (E.D. Cal. 2020).  If a plaintiff alleges "a failure to act instead of an affirmative act" the standard is relaxed.  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).  Again, "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. /////

9

1   2018).  An omission claim must still be "specific enough to give defendants notice of the

2   particular misconduct[.]"  *Kearns*, 567 F3d at 1124.

3         Here, Sheets alleges sufficient information to give defendants notice.  *See Id.* at 1124.

4   Sheets contends the defendants omitted information regarding the TRV axle and its flawed

5   manufacturing, inferior steel, and poor welding.  FAC ¶¶ 22–23, 40–47, 56.  She pleads that

6   neither defendant "informed Plaintiff of the Axle Defect's existence . . . prior to purchase."  *Id.*

7   ¶ 23.  She pleads she incurred damages as a result of "[d]efendants' omissions and

8   misrepresentations associated with the Axle Defect."  *Id.* ¶ 22.  She alleges LCI improperly

9   "touts" its Axles on its website, *id.* ¶ 39, and more generally "defendants violated . . . the CLRA

10   by representing through its marketing that the Axles are of high standard," *id.* ¶ 70.  Sheets

11   therefore provides, however narrowly, the "who what when where and how," of the omission.

12   *MacDonald v. Ford Motor Co.,* 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014).  The who is

13   "defendants" Forest River and LCI, the "what" is their knowledge of the axle defect, the "when"

14   is prior to the sale of her vehicle, and the "where" is through the LCI website and defendants'

15   marketing more generally.  *Id.* ¶¶ 22, 23, 39, 40–47; *MacDonald,* 37 F. Supp. at 1096.  Forest

16   River argues Sheets does not point to any particular omission or representation on its part.  Forest

17   River Mot. at 4, 15–16.  But Sheets alleges "defendants" – plural – made representations through

18   marketing the axles. FAC ¶ 70.  At this stage, this pleading is sufficient.

19         **b.  Pleading of Defendants' Knowledge**

20         Defendants do raise a different, successful argument regarding the CLRA claim.  In the

21   First Amended Complaint, plaintiff does not sufficiently plead how either defendant had

22   knowledge of the alleged defect.  Forest River Mot. at 17–18; LCI Mem. at 13–14.  "California

23   federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant

24   was aware of a defect at the time of sale to survive a motion to dismiss."  *Wilson v. Hewlett-*

25   *Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).

26         Sheets points to three possible indicators of defendants' knowledge: (1) online complaints;

27   (2) post-sale complaints lodged with the Better Business Bureau ("BBB") and the National

28   Highway Traffic Safety Administration ("NHTSA"); and (3) prior LCI recalls.  FAC ¶¶ 44, 46,

48–49.  Regarding the first online complaints indicator, Sheets alleges defendants were "put on notice of the Axle Defect since at least 2010 via consumer complaints published on internet blogs, forums, and other websites."  FAC ¶ 44.  Courts disagree regarding whether consumer complaints "in and of themselves adequately support an inference that a manufacturer was aware of a defect."  *Wilson*, 668 F.3d at 1147.  In *Williams v. Yamaha Motor Co. Ltd.*, the Ninth Circuit clarified that consumer complaints may support an allegation of pre-sale knowledge of a defect in some circumstances, where the plaintiff can explain in detail how the complaints were lodged and the mechanism through which the information travelled from consumers to management.  *See, e.g.*, *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1027 (9th Cir. 2017); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (finding plaintiffs adequately alleged knowledge because "record of complaints . . . show[s] that [the manufacturer] was clearly aware of a problem"); *Cirulli v. Hyundai Motor Co.*, No. 08-0854, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (finding plaintiff sufficiently alleged defendant's knowledge when plaintiff alleged defendant had "constantly tracked the [NHTSA] database").

Here, Sheets does not provide any such support for her allegations that would establish defendants' pre-sale knowledge.  Her complaint alludes to online complaints dating back to 2010 but provides no specific examples.  As this court noted in a prior case involving similar facts, absent allegations that defendants received these complaints, monitored certain websites where complaints were collected, or had some kind of mechanism in place to evaluate public internet comments, the court cannot plausibly infer, for the purposes of satisfying Rule 9(b), that defendants had knowledge of the alleged defect.  *Espineli v. Toyota Motor Sales*, *U.S.A., Inc.*, No. 17-00698, 2019 WL 2249605, at *6–*7 (E.D. Cal. May 24, 2019); *see also Baba v. Hewlett-Packard Co.*, No. 09–05946, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (finding "anecdotal complaints without dates or any other information are insufficient to allege . . . knowledge").  Further, Sheets does not allege a sufficient quantity of complaints to demonstrate defendants were on notice.  *See Williams*, 851 F.3d at 1027 n.8 (noting "an insufficiently small number of complaints" weighs against finding manufacturer was on notice of defect); *Baba*, 2011 WL 317650, at *3 ("Awareness of a few customer complaints, however, does not establish

1   knowledge of an alleged defect."); *Espineli*, 2019 WL 2249605, at *7 (finding three NHTSA

2   complaints, all predating sale of product, insufficient to establish defendants' awareness of the

3   complaints); *Wilson*, 668 F.3d at 1148 (twelve undated complaints and two complaints dated two

4   years after plaintiffs' purchases do not support inference that manufacturer was aware of defect at

5   time of sale). Here, plaintiff does not specify how many consumer complaints were made since

6   2010 and before she and the proposed class members purchased TRVs. Sheets's allegations of

7   online complaints do not establish defendants knew of the alleged defect.

8            Regarding the second post-sale complaints indicator Sheets invokes, Sheets points to post-

9   sale consumer complaints made to the BBB and NHTSA to allege defendants' knowledge.

10   FAC ¶ 46 n.11. The twelve BBB complaints she references were posted between 2018 and 2021.

11   *Id.* The two NHTSA complaints were dated September 30, 2019 and November 26, 2018.

12   *Id.* ¶ 48. The BBB and NHTSA complaints are not sufficient to plausibly allege defendants'

13   knowledge of the defect. The complaints do post-date Sheets's TRV purchase in 2017. *Id.* ¶ 13.

14   Post-sale evidence may support an inference of knowledge in certain limited circumstances, but

15   none apply here. *See McDonald*, 37 F. Supp. 3d at 1094 (finding internal bulletins generated

16   after purchase date supported inference of knowledge when the bulletins referenced time frame

17   that could include purchase date). Here, Sheets does not provide sufficient detail to show how

18   the post-sale documents could reasonably have provided notice to the defendants. The

19   complaints were not internal documents, and even though NHTSA is a federal agency and BBB

20   is a consumer protection nonprofit, plaintiff does not allege how defendants would have been

21   alerted to the complaints. *See, e.g., Espineli*, 2019 WL 2249605, at *7 (E.D. Cal. May 24, 2019)

22   (absence of allegations establishing defendants' particular awareness of undated and post-sale

23   complaints insufficient to demonstrate knowledge); *Goldstein v. General Motors LLC*, 517 F.

24   Supp. 3d 1076, 1090 (S.D. Cal. 2021) (finding post-sale complaints filed with NHTSA and

25   posted on third-party website two years after plaintiff's purchase did not establish knowledge).

26            Lastly, the court considers whether plaintiff's third indicator, LCI's prior recalls alone,

27   supports an inference of knowledge. Sheets alleges LCI has a practice of issuing recalls

28   suggesting LCI was aware of the alleged axle defect because it had specifically issued axle recalls

1  in the past.  FAC ¶ 49 ("[h]istorically, LCI has issued recalls in 2006, 2010, and 2015 regarding

2  axle failures").  Other courts have found recalls of a similarly designed product, without more, are

3  insufficient to establish knowledge of a defect.  *See Deras v. Volkswagen Group of America, Inc.*,

4  No. 17-05452, 2018 WL 2267448, at *6 (C.D. Cal. May 17, 2018) (finding "issuance of a recall

5  does not, without more, establish knowledge of a defect for products sold before the recall was

6  issued").  Without additional factual allegations, Sheets's allusions to previous recalls do not

7  plausibly allege how LCI was on notice of the alleged defect here.

8      For the reasons reviewed above, the court dismisses Sheets's CLRA claim, but with leave

9  to amend if amendment is possible under the confines of Rule 11.

10                    **2.      UCL Claims**

11      California's UCL provides a cause of action for business practices that are (1) unlawful,

12  (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200; *see also Gutierrez v. Wells Fargo*

13  *Bank, NA*, 704 F.3d 712, 717 (9th Cir. 2012).  "Although remedies under the [UCL] are limited to

14  injunctive relief and restitution, the law's scope is 'sweeping.'"  *Gutierrez*, 704 F.3d at 717

15  (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

16  Moreover, each "prong" of the UCL provides a separate and distinct theory of liability.  *Lozano v.*

17  *AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted).  The Ninth

18  Circuit has also held that Rule 9(b)'s heightened pleading standard applies to claims alleging

19  fraud under the UCL.  *Kearns*, 567 F.3d at 1125.  Sheets alleges claims under all three prongs of

20  the UCL.  FAC ¶¶ 80–90.

21                    **a.      Unlawful Prong**

22      The unlawful prong of the UCL "borrows violations of other laws and treats them as

23  unlawful practices," and "makes [them] independently actionable."  *AMN Healthcare, Inc. v. Aya*

24  *Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 950 (2018) (internal quotation marks, citations

25  omitted).  Here, Sheets borrows violations of the CLRA to support her claims under the unlawful

26  prong.  *See* FAC ¶ 87.  As her UCL claim is predicated on the CLRA claim and the CLRA claims

27  cannot survive as currently pled, the court finds Sheets has not adequately alleged a violation of

28  the unlawful prong of the UCL.

1          **b.     Unfair Prong**

2          "A business practice is unfair within the meaning of the UCL if it violates established

3   public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to

4   consumers which outweighs its benefits." *Gross v. Vilore Foods Co., Inc.,* No. 20-0894,

5   2021 WL 1428487, at *6 (S.D. Cal. Apr. 15, 2021) (citing *McKell v. Wash. Mut., Inc.*,

6   142 Cal. App. 4th 1457, 1473 (2006).  Sheets contends defendants engaged in unfair conduct by

7   "fail[ing] to disclose and actively conceal[ing] that the Axles contained a design defect that

8   caused it [*sic*] to prematurely fail."  FAC ¶ 81.  This claim overlaps with Sheets's CLRA claim

9   because both require that defendants had knowledge of the defect.  Because Sheets has not

10  adequately pled defendants had knowledge of the alleged axle defect, a UCL violation under the

11  unfair prong cannot currently proceed.  *See Hodson v. Mars, Inc.,* 891 F.3d 857, 867 (9th Cir. 2018)

12  (defendant's "failure to disclose information it had no duty to disclose in the first place is not

13  substantially injurious, immoral, or unethical.").

14         **c.     Fraudulent Prong**

15         "To state a claim under the fraudulent prong of the UCL, 'it is necessary only to show that

16  members of the public are likely to be deceived' by the business practice or advertising at issue."

17  *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011) (quoting *In re*

18  *Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).  However, "when federal district courts have

19  considered fraudulent prong claims based on representations about defective products, they have

20  generally required a plausible showing that the defendant knew of the alleged defect when it

21  made the representations alleged to be deceptive."  *Id.* at 1160 (citations omitted); *see also Baba*,

22  2010 WL 2486353, at *7 (dismissing UCL claim when plaintiffs did not adequately allege

23  defendants "knew of the alleged defects at the time [the plaintiffs] purchased their computers or

24  contacted customer support"); *Neu v. Terminix Int'l, Inc.*, No. 07-6472, 2008 WL 2951390, at *3

25  (N.D. Cal. July 24, 2008) (dismissing complaint when plaintiff failed to sufficiently allege

26  defendants knew statements were false at time made).  As discussed above, Sheets has not

27  sufficiently pled that defendants were aware of the defect at the time plaintiff purchased the TRV;

28  she therefore has not pled a UCL claim based on fraud.

1    **C.    Motions to Strike Nationwide Class Allegations**

2         Defendants also move to strike plaintiff's class allegations under Rule 12(f).  Forest River

3    Mot. at 13; LCI Mem. at 1.  Because the court is granting defendants' motions to dismiss it does

4    not reach defendants' motions to strike class allegations at this time.

5    **D.    Leave to Amend**

6         Plaintiff requests leave to amend her complaint.  Opp'n Forest River Mot. at 18; Opp'n

7    LCI Mem. at 17.  Generally, the Ninth Circuit has a liberal policy favoring amendments and,

8    thus, leave to amend should be freely granted.  *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*,

9    957 F.2d 655, 658 (9th Cir. 1992).  A court need not grant leave to amend, however, in cases

10   where the court determines permitting a plaintiff to amend would be futile.  *See, e.g.*, *Rutman*

11   *Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend

12   is not an abuse of discretion where the pleadings before the court demonstrate that further

13   amendment would be futile.").  As signaled above, the court finds plaintiff may be able to plead

14   successful claims through amendment, and therefore grants leave to amend.

15   **IV.    CONCLUSION**

16        For the foregoing reasons, LCI and Forest River's motions to compel arbitration are

17   **denied**.  Defendants' motions to dismiss are **granted.**  The court grants plaintiff leave to amend

18   her CLRA and UCL claims, and include her class allegations in any amendment.  Any amended

19   complaint shall be filed within twenty-one days.

20        This order resolves ECF Nos. 15 and 16.

21        IT IS SO ORDERED.

22   DATED:  October 22, 2021.


                                    _____
                                    CHIEF UNITED STATES DISTRICT JUDGE

15